## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICHARD PARDUE and | ) | |
| GLOBAL SALVAGE NETWORK | ) | |
| LLC, | ) | CASE NO. 1:19-cv-1578 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| ALLEN KEEN, | ) | |
| THE SALVAGE GROUP, INC., | ) | |
| LARRY HANDSHOE, and | ) | |
| HANDSHOE'S FLEA MARKET, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES DUE TO TRADE SECRET MISAPPROPRIATION, RACKETEERING, COMPUTER TRESPASS, THEFT, TORTIOUS INTERFERENCE, AND OTHER WRONGFUL CONDUCT; DEMAND FOR JURY TRIAL

Plaintiffs, Richard Pardue and Global Salvage Network LLC (collectively, "Plaintiffs"), by counsel, for their Complaint against Defendants, Allen Keen, The Salvage Group, Inc., Larry Handshoe, and Handshoe's Flea Market, LLC (collectively, "Defendants"), state:

### PARTIES

1.      Plaintiff, Richard Pardue ("Pardue"), is a citizen of the State of Indiana and resides in Jennings County, Indiana.

2.      Plaintiff, Global Salvage Network LLC ("GSN"), is an Indiana limited liability company with its principal place of business located in Marion County, Indiana. Its only two members are Pardue (51% owner) and Defendant, Allen Keen (49% owner).

3.      Defendant, Allen Keen ("Keen"), is a citizen of the State of Indiana and resides in Hendricks County, Indiana.

4.      Defendant, The Salvage Group Inc. ("Competitor"), is an Indiana corporation with its principal place of business in Hendricks County, Indiana. Upon information and belief, Keen is the sole owner of Competitor.

5.      Defendant, Larry Handshoe ("Handshoe"), is a citizen of the State of Indiana and resides in Noble County, Indiana.

6.      Defendant, Handshoe's Flea Market LLC ("HFM"), is an Indiana limited liability company with its principal place of business located in Noble County, Indiana.

### JURISDICTION & VENUE

7.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 1367, because this action invokes questions of federal law and matters of state law that form the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants reside or are located in the Southern District of Indiana and because events giving rise to this action occurred in the Southern District of Indiana.

### FACTS RELEVANT TO ALL CLAIMS

9.      GSN is a professional salvage company that services the insurance, trucking/transportation, manufacturing and commercial industries with the sale of distressed, salvageable merchandise and materials.

10.      On or September 2, 2015, Keen began working for GSN pursuant to a certain Compensation Memorandum, a true and accurate copy of which is attached hereto and made a part hereof as Exhibit A.

11.      Among other terms, the Compensation Memorandum provided that Keen would "at all times devote Employee's full working time, best efforts, ability, skill and attention

2

exclusively to the furtherance of the best business objectives and interests of the Company, all to the exclusion of other employers or their products and services."

12.     At the time he was hired by GSN in 2015, Keen agreed that he would subsequently purchase Pardue's interest in GSN in two to three years , and therefore, Pardue transferred to Keen, without charge, a forty-nine percent (49%) membership and ownership interest in GSN. Thereafter, and at all times relevant hereto, Keen has been a member and owner of GSN. A true and accurate copy of the Agreement to Transfer Units is attached hereto and made a part hereof as Exhibit B.

13.     The Amended Operating Agreement of the Global Salvage Network, an Indiana Limited Liability Company, a true and accurate copy of which is attached hereto and made a part hereof as Exhibit C provides as follows:

17.1    As part of the consideration for this Agreement, each Member agrees:

17.2    That at no time during the term of this Agreement will Member for his or herself, or in behalf of any person or entity, engage in business or service now engaged by Company business without prior approval of all other Members. Members will not, directly or indirectly, solicit or attempt to solicit business or patronage of any person or entity for the purpose of promoting business and service now engaged by the Company, except on behalf of the Company;

17.3    That during the term of this agreement, Member will not service contracts and accounts from, or work in, or for any company or person or entity other than the Company selling products or services identical, similar, or incidental to the business of the Company; and

17.4    That if any Member withdraws from the Company, he will not, for a period of two (2) years, directly or indirectly carry on, engage in, or be interested in the business or service now engaged by the Company.

14.      While its investigation is ongoing, GSN has discovered acts of dishonesty and theft from it by Keen including but not limited to Keen's skimming of salvaged goods and materials from client and customer projects for his own benefit.

15.     Upon information and belief, Keen, Handshoe and HFM entered into an arrangement whereby Keen, on behalf of GSN, allowed Handshoe and HFM to purchase salvaged goods at less than fair market wholesale value. Handshoe and HFM would then make retail sales of the salvaged goods and pay money from the retail sales to Keen.

16.     On January 1, 2019, Competitor was formed.

17.     On information and belief, Keen and Competitor are engaging in the same or substantially similar business as GSN, namely the handling of salvage claims.

18.     Since January 7, 2019, other former GSN employees have gone to work for Keen and Competitor.

19.     Keen, Competitor and its employees are using assets and property (tangible and intangible) that are owned by GSN.  On information and belief, Keen and the other employees who departed from GSN to go work for Competitor had planned in advance to do so, and one or more of them also removed or copied valuable confidential and proprietary information of GSN.

20.     On information and belief, Competitor and GSN's former employees working for Competitor are using GSN's confidential and proprietary information and its trade secrets in order to compete with GSN.

21.     Keen remains an owner of GSN while forming and leading Competitor in competing with GSN, armed with GSN's confidential information that was stolen from GSN and GSN employees that were raided by Keen and Competitor to compete with GSN.

## COUNT I:  MISAPPROPRIATION OF TRADE SECRETS

22.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

23.     GSN's confidential and proprietary information derives independent economic value from not being known, or readily ascertainable through proper means, by persons who would

benefit from its disclosure or use such as Competitor.

24.     GSN has invested significant time and expense to develop its confidential and proprietary information and has taken reasonable measures to protect the secrecy of its confidential and proprietary information.

25.     Keen who now owns and works for Competitor only learned of GSN's confidential and proprietary information, and only had access to it, through his employment with and ownership in GSN.

26.     GSN's confidential and proprietary information constitutes trade secrets pursuant to federal law, namely the "Defend Trade Secrets Act of 2016," 18 U.S.C. §1832 *et seq.* and also pursuant to Indiana law, namely the "Indiana Uniform Trade Secrets Act," Ind. Code § 24-2- 3-1 *et seq.* (hereinafter collectively referred to as the "Trade Secrets").

27.     Keen owed duties to GSN to maintain the Trade Secrets as confidential; he breached those duties when obtaining, disclosing, and using the Trade Secrets by improper means and in breach of his obligations to GSN.

28.     On information and belief, Competitor obtained possession of the Trade Secrets from Keen and/or other employees hired away from GSN with knowledge that the Trade Secrets were obtained in breach of duties owed to GSN or by improper means.

29.     Keen misappropriated the Trade Secrets belonging to GSN.

30.     Any ongoing retention, use, or disclosure of the Trade Secrets constitutes misappropriation by any of the Defendants or those acting with or for them who have access to or use or disclose the Trade Secrets when they now should not have possession of or use the same, even if from memory.

31.     The misappropriation of the Trade Secrets by Keen for his own benefit and to the

detriment of GSN was willful and malicious.

32.     There is a genuine, imminent threat that Keen and Competitor (and others suspected to be discovered hereafter) will inevitably continue to use, disclose, and benefit from the Trade Secrets.

33.     The use or inevitable disclosure of the Trade Secrets by Keen and Competitor (and others suspected to be discovered hereafter) is unauthorized, unlawful, and in breach of their legal, fiduciary, and/or contractual duties to GSN.

34.     The use or inevitable disclosure of the Trade Secrets by Keen and Competitor has caused and will continue to cause irreparable harm to GSN by the ongoing dilution in value of the Trade Secrets.

35.     GSN has suffered and will continue to suffer damages from the use or inevitable disclosure of the Trade Secrets by Keen and Competitor (and others suspected to be discovered hereafter) by way of lost business and profits.

36.     For violations of the "Defend Trade Secrets Act of 2016," Keen (and others suspected to be discovered hereafter) are subject to fines, imprisonment of up to ten (10) years, or both, while Competitor is subject to fines in the greater amount of $5,000,000 or three times the value of the stolen Trade Secrets, including GSN's expenses for research and design and other costs of reproducing the trade secrets that Competitor has avoided through its theft of trade secrets  (18 U.S.C. §§ 1832(a) and (b)).

37.     Pursuant to applicable federal and state law, GSN is entitled to (and does seek herein) the following relief for the misappropriation and ongoing or inevitable disclosure and use of its Trade Secrets by Keen and Competitor (and others suspected to be discovered hereafter): (a) civil seizure and preliminary and permanent injunctive relief to prevent any further use or

disclosure of the Trade Secrets; (b) return of the Trade Secrets to GSN, as well as all materials, information, and products derived from them to GSN; (c) all other equitable and affirmative acts necessary to protect the Trade Secrets from any further use, disclosure, or dilution; (d) an award of damages for GSN's losses due to the misappropriation, including lost business, lost profits, and unjust enrichment; (e) an award of exemplary damages of two (2) times the amount of GSN's damages, plus GSN's reasonable attorneys' fees for the willful and malicious misappropriation of Trade Secrets; and (f) all other proper and appropriate relief allowed by law.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen, and Competitor (and others discovered and proven hereafter) for injunctive relief, damages, exemplary damages, attorneys' fees, and all other appropriate relief awardable due to their misappropriation of the Trade Secrets.

## COUNT II:  VIOLATION OF COMPUTER FRAUD & ABUSE ACT

38.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

39.     GSN's computer system is a "protected computer" as defined in 18 U.S.C. § 1030(e)(2) because it is used in or affects interstate commerce or communications.

40.     When Keen obtained GSN's confidential and proprietary information, including Trade Secrets, by downloading and emailing it to his personal email account(s) or taking it by other methods, Keen received information that he was not entitled to obtain for personal use, therefore "exceed[ing] authorized access" as defined in 18 U.S.C. § 1030(e)(6).

41.     Keen (and others suspected to be discovered hereafter) violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (hereinafter, the "Act").

42.     GSN has suffered a "loss" as defined in 18 U.S.C. § 1030(e)(11) from Keen's and Competitor's violation of the Act, because the value of the Trade Secrets and other

confidential/proprietary GSN information misappropriated by Keen exceeds $5,000, and GSN has and will incur costs to investigate and assess the damages caused thereby and to respond to such misconduct.

43.    Pursuant to the Act, GSN is entitled to (and does seek herein) recovery of its compensatory damages and injunctive relief pursuant to 18 U.S.C. § 1030(g).

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen (and others discovered and proven hereafter) for injunctive relief, compensatory damages, and all other appropriate relief awardable due to their violation of the Act.

<u>**COUNT III:  COMPUTER TRESPASS**</u>

44.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

45.    GSN maintains its computers on a "computer network" and a "computer system" as those terms are defined in Ind. Code § 35-43-2-3(a).

46.    Keen was not authorized to access GSN's computer network or computer system to obtain and transfer files and/or documents from GSN's computers to his personal email accounts for either his personal or commercial use, or to benefit Competitor or any other third party.

47.    By knowingly or intentionally accessing GSN's computers to obtain and transfer GSN's files and/or documents for his own personal or commercial use or for Competitor or any other third party to use, Keen (and others suspected to be discovered hereafter) committed computer trespass in violation of Ind. Code § 35-43-2-3(b).

48.    Pursuant to Ind. Code § 34-24-3-1, GSN is entitled to (and does seek herein) recovery of three (3) times its actual damages, costs, and attorneys' fees.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen (and others discovered and proven hereafter) for triple the full amount of all actual damages

incurred by GSN (including but not limited to GSN's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their computer trespass.

## COUNT IV:  TORTIOUS INTERFERENCE

49.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

50.     Only through his employment with and ownership interest in GSN did Keen have access to the Trade Secrets.

51.     As a consequence of their employment, Keen (and the former GSN employees working for Competitor) know the details of GSN's clients and customers and their current and prospective business needs.

52.     Competitor and Keen (and suspected others to be discovered hereafter) tortiously interfered with GSN's employment relationships with the employees by soliciting them and inducing them to leave GSN (or may yet leave GSN) to go work for Competitor. The solicitations, inducement, and hiring away of employees from GSN by Keen and/or Competitor was  intentional and without a legitimate purpose because it was a scheme that misappropriated the Trade Secrets, required Keen (and possibly others) to breach his contractual and legal obligations to GSN, all in order to unfairly compete with and harm GSN.  GSN has been harmed as a result of the mass exodus of its employees to Competitor.

53.     On information and belief, Keen and Competitor have tortiously interfered with GSN's business relationships because:

        a.  GSN enjoys valid relationships with its pending clients and customers;

        b.  Defendants have knowledge of the relationships solely from their employment or other confidentiality obligations owed to GSN;

        c.  Defendants intentionally interfered with GSN's relationships with pending clients and customers by contacting them for the purpose of providing the same or substitute services to them as GSN is providing or offering to them, effectively springboarding from the knowledge and use of the client's and

customer's status and project details with GSN rather than taking the time in years and expense to start anew with Competitor's own research and development efforts to identify and develop prospects;

d. Defendants lacked justification for their interference because, through the theft and use of Trade Secrets in order to identify and target GSN's clients and customers, they violated legal and contractual obligations in doing so; and

e. GSN has been harmed by Defendants' wrongful interference with the relationships.

54. By breaching confidentiality obligations as well as state and federal laws protecting Trade Secrets and GSN's computers and systems, Keen and Competitor employed wrongful means to solicit GSN's customers; therefore, Defendants' interference with GSN's business relationships was not justified.

55. GSN is entitled to injunctive relief, damages for losses suffered as a result of Defendants' tortious interference with its business relationships, and other appropriate relief to be made whole.

56. Competitor's and Keen's tortious interference with GSN's business relationships was willful and malicious, entitling GSN to recover punitive damages, costs, and attorneys' fees.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Competitor and Keen (and others discovered and proven hereafter) for injunctive relief against any similar acts and for all damages incurred by GSN, punitive damages, costs, attorneys' fees, and all other appropriate relief awardable due to their tortious interference with GSN's business relationships.

## **COUNT V: THEFT**

57. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

58.     When Keen took GSN's assets and transferred GSN's files and documents from GSN's computers, Keen asserted unauthorized control over GSN's assets, files and documents with intent to deprive GSN of their value, thereby committing theft pursuant to Ind. Code § 35-43-4-2.

59.     On information and belief, Competitor is using GSN's assets and stolen information by and through Keen (and others suspected to be discovered hereafter) with knowledge of or even encouragement of the theft and Competitor is thereby complicit in such theft.

60.     During his employment with GSN, Keen skimmed salvaged products and materials from client and customer projects, with intent to deprive GSN or its customers of their value; such acts were unauthorized because he did not disclose these activities to Pardue or GSN, thereby committing theft pursuant to Ind. Code § 35-43-4-2.

61.     While its investigation is ongoing, Keen's theft in skimming salvaged products and  materials from client and customer projects may have harmed GSN's clients and customers as well as GSN's reputation, and diluted GSN's profit margins.

62.     Pursuant to Ind. Code § 34-24-3-1, GSN is entitled to (and does seek herein)  its damages, recovery of three (3) times its actual damages, costs, and attorneys' fees for each act of theft.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen and Competitor (and others discovered and proven hereafter) for their damages, triple the full amount of all actual damages incurred by GSN (including but not limited to GSN's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their theft of property and information from GSN.

## COUNT VI:  CONVERSION

63.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

64.     When Keen took GSN's assets and transferred GSN's files and documents from GSN's computers, Keen asserted unauthorized control over GSN's assets, files and documents, thereby committing conversion pursuant to Ind. Code § 35-43-4-1.

65.     On information and belief, Keen and Competitor are using GSN's stolen assets and information by and through Keen (and others suspected to be discovered hereafter) with knowledge, or even encouragement, of the conversion, and Competitor is thereby complicit in such conversion.

66.     The theft in skimming products and equipment from client and customer projects by Keen constituted unauthorized control over the same, thereby committing conversion pursuant to Ind. Code § 35-43-4-1.

67.     Pursuant to Ind. Code § 34-24-3-1, GSN is entitled to recovery of three (3) times its actual damages, costs, and attorneys' fees.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen and Competitor (and others discovered and proven hereafter) for their damages, triple the full amount of all actual damages incurred by GSN (including but not limited to GSN's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their conversion of property and information from GSN.

## COUNT VII:  RACKETEERING & CORRUPT BUSINESS INFLUENCE

68.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

69.     Pursuant to the Racketeer Influenced and Corrupt Organizations statute at 18 U.S.C. § 1961-68 as well as Indiana's similar statute at Ind. Code § 35-45-6-1 *et seq.* (collectively, "RICO"), it is unlawful for any person who has received any income derived from a pattern of

racketeering activity to use any part of such income or the proceeds thereof to acquire an interest in or establish an enterprise which is engaged in or affects interstate commerce.  (18 U.S.C. §1962(a); *see also* Ind. Code §35-45-6-2(1).)

70.    It is unlawful under RICO for any person through a pattern of  racketeering activity to acquire any interest in or control any enterprise which is engaged in or affects interstate commerce.  (18 U.S.C. §1962(b); *see also* Ind. Code §35-45-6-2(2).)

71.    It is unlawful under RICO for any person employed by or associated with any enterprise engaged in or affecting interstate commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. (18 U.S.C. §1962(c); *see also* Ind. Code §35-45-6-2(3).)

72.    It is unlawful under RICO for any person to conspire to violate any of the provisions of RICO set forth in the foregoing paragraphs.  (18 U.S.C. §1962(d).)

73.    Keen has received income from a pattern of racketeering activity to acquire an interest in, establish, or control Competitor which is engaged in or affects interstate commerce in violation of RICO.

74.    On information and belief, in violation of RICO, Keen conspired with Handshoe, HFM, and one or more other persons to commit his multiple acts of theft from GSN.

75.    By obtaining products and equipment through skimming them from client and customer projects without the knowledge or consent of GSN or its customer and transporting them through interstate commerce for their personal use or sale or for their financial benefit, Keen, Handshoe, and HFM engaged in "racketeering activity"  to commit theft from interstate shipment in violation of 18 U.S.C. §§ 1961, 1962(a), 2314, and 2315; *see also* Ind. Code §§ 35-45-6-1 and -2.

76.     By stealing GSN's assets, Trade Secrets, and downloading, transmitting or otherwise conveying them away from GSN and to or for their own benefit including to benefit Competitor, Keen (and others suspected to be discovered hereafter) engaged in "racketeering activity" for the theft of trade secrets in violation of "Defend Trade Secrets Act of 2016." (18 U.S.C. §§ 1832(a)(1) and (a)(2); 1961, 1962(a); *see also* Ind. Code §§ 24-2-3-1 *et seq.* and 35-45-6-1 and -2.).

77.     By receiving or possessing the Trade Secrets, Competitor and Keen (and on belief, other persons who work for Competitor) engaged in "racketeering activity" for the theft of trade secrets in violation of "Defend Trade Secrets Act of 2016." (18 U.S.C. §§ 1832(a)(3), 1961, 1962(a)); *see also* Ind. Code §§ 24-2-3-1 *et seq.* and 35-45-6-1 and -2.).

78.     On information and belief,  Keen (and others suspected to be discovered hereafter) conspired to steal away and use the Trade Secrets for their personal gain and/or the economic benefit of Competitor to the exclusion or detriment of GSN and knew that such theft would injure GSN, thereby engaging in "racketeering activity" for the theft of trade secrets in violation of "Defend Trade Secrets Act of 2016." (18 U.S.C. §§ 1832(a)(5), 1961, 1962(a); *see also* Ind. Code §24-2-3-1 *et seq.*).

79.     By committing two or more acts of racketeering activity for the theft of the Trade Secrets for their collective benefit and to establish and operate Competitor in interstate commerce, Keen and Competitor (and others suspected to be discovered hereafter) engaged in a "pattern of racketeering activity" prohibited by RICO under 18 U.S.C. §§ 1832(a), 1961, and 1962; *see also* Ind. Code §§ 24-2-3-1 *et seq.* and 35-45-6-1 and -2.

80.     Pursuant to RICO, GSN is entitled to obtain (and does seek herein) appropriate orders to prevent further RICO violations, including but not limited to: (a) that Competitor and

the other Defendants divest themselves from each other; (b) that Defendants' activities in the  type of endeavor (i.e., salvage or its affiliated businesses) be restricted from engaging in such activities; and (c) that Defendants' enterprise (i.e., Competitor) be dissolved with provision for any innocent persons.  (18 U.S.C. §1964(a).)

81.    GSN is entitled to recover threefold its damages sustained, costs, and reasonable attorneys' fees.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen and Competitor (and others discovered and proven hereafter) for their damages, triple the full amount of all actual damages incurred by GSN (including but not limited to GSN's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their  unlawful RICO violations.

## COUNT VIII:  BREACH OF FIDUCIARY DUTY

82.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

83.    At all times relevant hereto, GSN was and is owned 49% by Keen and 51% by Pardue.

84.    Based upon his ownership in GSN, Keen owed fiduciary duties to GSN to act openly, honestly, loyally, and in good faith and fair dealing.

85.    Keen breached his fiduciary duties owed to GSN in the following ways:

   a.  Stealing monies, equipment, property, and confidential and proprietary information belonging to GSN for personal purposes;

   b.  Diverting and secreting opportunities from his partner for his personal financial gain;

   c.  Receiving in the form of a "kickback" payments from Handshoe and HFM (and other suspected similar arrangements to be discovered hereafter) for selling salvaged goods to them at less than fair market value;

    d.   Misappropriating the Trade Secrets;

    e.   Enticing breaches of duties owed by others to GSN to further his personal interests and financial gain, including their misappropriation of Trade Secrets, computer trespass, violation of the Act, theft, conversion, and breach of duty of loyalty;

    f.   Tortiously interfering with GSN's business relationships;

    g.   Hiring away GSN's employees for Competitor;

    h.   Stealing products and materials by skimming them from client and customer projects, and allowing other persons to do so, for personal and/or financial gain;

    i.   Forming and promoting Competitor to solicit GSN's clients and customers and otherwise compete with GSN; and

    j.   Otherwise planning to, and carrying out, acts of unfair competition against GSN.

86.    GSN has suffered damages as a result of Keen's wrongful conduct.

87.    Keen's wrongful conduct was willful, malicious, and intentionally harmful to GSN, entitling GSN to recover punitive damages, costs, and attorneys' fees.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen for all damages, punitive damages, costs, attorneys' fees, and other appropriate relief awardable due to Keen's breach of fiduciary duty.

## COUNT IX:  BREACH OF CONTRACT

88.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

89.    The Operating Agreement is a valid and binding contract.

90.    By committing any of the wrongful conduct described herein, Keen has breached the duties imposed upon him under the Operating Agreement.

91.    By failing to acquire Pardue's interest as promised in 2015, and instead simply stealing the assets and business of GSN, Keen has breached his agreement with Pardue.

92.    GSN and Pardue have suffered damages as a result of Keen's s breaches of contract.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen for all damages and other appropriate relief awardable due to his breaches of contract.

## COUNT X:  BREACH OF DUTY OF LOYALTY

93.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

94.     Each GSN employee owed to GSN a duty of loyalty to act honestly and in good faith while carrying out his or her duties in the best interests of GSN.

95.     Keen (and others suspected to be discovered hereafter) breached their duties of loyalty when they took GSN's misappropriated the Trade Secrets, stole GSN property and confidential and proprietary information, misused GSN funds, committed computer trespass, violated the Computer Fraud & Abuse Act, and/or tortiously interfered with GSN's customers and/or employee relationships.

96.     Keen (and others suspected to be discovered hereafter) breached the duties of loyalty when they obtained solar energy products and equipment from customer projects without paying for or disclosing the same, which harmed GSN.

97.     GSN has suffered damages as a result of Keen's wrongful conduct.

98.     The foregoing wrongful conduct was willful, malicious, and intentionally harmful, entitling GSN to recover punitive damages, costs, and attorneys' fees.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Keen (and others discovered and proven hereafter) for all damages, punitive damages, costs, attorneys' fees, and other appropriate relief awardable due to their breach of the duty of loyalty.

## COUNT XI:  CIVIL CONSPIRACY

99.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

100.     Defendants conspired with one another and acted in concert to accomplish the illegal acts as described herein.

101.     As a direct and proximate result of the Defendants' actions as described herein and otherwise, GSN and Pardue suffered damages.

102.     The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiffs to an award of exemplary and punitive damages in an amount sufficient to deter Defendants, and each of them from engaging in such conduct in the future.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants (and others discovered and proven hereafter) for all damages, punitive damages, costs, attorneys' fees, and other appropriate relief awardable due to their civil conspiracy.

## COUNT XII:  REPLEVIN

103.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

104.     Without GSN's authorization, Defendants wrongfully obtained and/or wrongfully retained property belonging to GSN, including but not limited to GSN's personal property, confidential and proprietary information, such as the Trade Secrets and the information subject to the Confidentiality Conditions.

105.     GSN's ownership rights of its information and property are superior and exclusionary to all other persons or entities, including Defendants.

106.     Pursuant to Ind. Code § 32-35-2-1 *et seq*., GSN is entitled to immediate possession of all of its information and property and any materials derived therefrom.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants for the immediate and permanent return of all of GSN's property and information, and all other appropriate relief awardable due to Defendants' wrongful taking and/or detention of

GSN's property.

## COUNT XIII:  ACCOUNTING

107.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

108.    As an owner and member of GSN, Keen still owes fiduciary duties to GSN and Pardue.

109.    GSN and Pardue are entitled to a full accounting of all of Keen's and Competitor's activities that may have been or may still be conflicts of interest and/or otherwise relevant or harmful to GSN's business, financial status, and future success.

WHEREFORE, Plaintiffs pray that the Court enter an order of affirmative equitable relief in their favor and against Keen and Competitor for a full accounting of his/its conflicting, relevant, or harmful activities as to GSN and a judgment in their favor for all other appropriate relief awardable during Keen's period of ownership in GSN.

## PRAYER FOR RELIEF

For all of the foregoing reasons, Plaintiffs, Richard Pardue and Global Salvage Network LLC, pray for judgment in their favor and against each and every Defendant for the relief claimed herein in order to stop all activities that irreparably harm Plaintiffs, to restore to Plaintiffs their Trade Secrets and other property, materials, monies, and information, to take all reasonable and appropriate measures to protect Plaintiffs from further harm by Defendants' wrongful conduct, for all damages, punitive damages, costs, prejudgment interest, attorneys' fees, and equitable relief as allowed by law.

## DEMAND FOR JURY
## TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

MORSE & BICKEL, P.C.

*/s/ John J. Morse*
John J. Morse

*Counsel for Plaintiffs, Richard Pardue and Global Salvage Network, LLC*

MORSE & BICKEL, P.C.
320 N. Meridian Street
Suite 600
Indianapolis, IN  46204
Phone: (317) 686-1540
Fax: (317) 686-1541
Morse@MorseBickel.com